# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| M-AUDITS, LLC, | ) | CASE NO. 1:15-cv-1433 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| HEALTHSMART BENEFIT | ) | |
| SOLUTIONS, INC., | ) | |
| | ) | |
| DEFENDANT. | ) | |

This matter is before the Court on two issues:

1. The objection of defendant HealthSmart Benefit Solutions, Inc.'s ("defendant" or "HealthSmart") to the Report and Recommendation (Doc. No. 50 ["R&R"]) of Magistrate Judge Burke regarding the motion of plaintiff M-Audits, LLC's ("plaintiff" or "M-Audits") (Doc. No. 24 ["P. Mot."]) to show cause and application for an order of contempt against HealthSmart[1] for allegedly failing to comply with an agreed order filed by the Court on August 24, 2015 (Doc. No. 22 ["Order"]). (Doc. No. 51 ["Obj."].) M-Audits responded to HealthSmart's objection (Doc. No. 54 ["Resp. to Obj."]). HealthSmart filed a supplemental brief in support of its objection to the R&R (Doc. No. 55), to which M-Audits also responded (Doc. No. 56).

2. HealthSmart's second motion[2] to modify the Order (Doc. No. 52 ["D. Mot."]), to which M-Audits responded (Doc. No. 53 ["P. Resp."]).

---

[1] HealthSmart responded to M-Audits' motion (Doc. No. 27 ["Def. Resp."]), to which M-Audits replied (Doc. No. 33 ["P. Reply"]).

[2] HealthSmart's first motion was stricken by the Court. (*See* Doc. No. 45.)

**A. Background**

**1. Factual**

This case was removed from the Lorain County Court of Common Pleas on July 21, 2015, on the basis of diversity jurisdiction, 28 U.S.C. § 1332. (Doc. No. 6 ["Notice of Removal"].) As alleged in the state court complaint (Doc. No. 6-2 ["Compl."]), plaintiff is an auditing firm that provides claim review services for health benefit plans, including health plans administered by Commerce Benefit Group ("CBG"); CBG is a third-party administrator ("TPA") for self-insured health care plans. (Compl. ¶¶ 5, 6.)

After lengthy negotiations, a deal was structured whereby defendant HealthSmart would purchase the assets of CBG, M-Audits, and four other entities pursuant to an asset purchase agreement ("APA") for a total purchase price of $7 million dollars, with a payment of $1.5 million dollars made by HealthSmart and $5.5 million dollar "pursuant to three year earn-out schedules for CBG and M-Audits." (*Id*. ¶¶ 4, 7, 8.)

Before closing, HealthSmart notified CBG and M-Audits that its lender, Silver Point Finance, LLC ("Silver Point"), was demanding that all payments earned by CBG and M-Audits pursuant to the earn-out schedule be subordinated to any debt owed to Silver Point. (*Id*. ¶ 9.) M-Audits would not agree to the subordination, so an alternative structure was developed whereby the assets of M-Audits were removed from the APA and purchased separately by HealthSmart pursuant to a Side Letter Agreement. (*Id*. ¶¶ 4, 10.) The Side Letter Agreement provided that HealthSmart would use commercially reasonable efforts to cause its customers to enter into M-Audits' service agreement contract for claim auditing instead of the agreed earn-out purchase price for the assets of

M-Audits. (*Id*. ¶ 13.) The APA and Side Letter Agreement closed on July 1, 2014. (*Id*. ¶ 4.)

M-Audits provided copies of its customer service agreement contracts to HealthSmart. The contracts contain an automatic renewal provision if a termination notice is not received pursuant to the terms of the agreement. M-Audits had not received termination notices from any customers at the time of the closing. (*Id*. ¶¶ 14, 15.) However, M-Audits' revenues from customers now using HealthSmart as their TPA (instead of CBG) declined over 200%. (*Id*. ¶ 15.) M-Audits alleges that its decline in revenue is due to HealthSmart diverting business away from M-Audits. (*Id*. at ¶ 16.)

HealthSmart began to use a company called PHX to route claims to M-Audits. PHX is primarily an auditing firm and a competitor of M-Audits. (*Id*. ¶ 18.) M-Audits alleges that PHX was given full discretion by HealthSmart for routing (or not routing) claims to M-Audits, thereby making it unlikely that M-Audits will be able to generate revenue to cover its operating expenses or earn its owner the intended purchase price for its assets. (*Id*. ¶ 24.)

Over the next several months and continuing through May 2015, HealthSmart referred only a small percentage and a small dollar volume of claims to M-Audits. (*Id*. ¶ 20.) In late May 2015, HealthSmart took the position that it had no obligation to make efforts to cause HealthSmart customers to enter into M-Audits' service agreement, and that it was acting reasonably because it asked PHX to forward some claims to M-Audits. (*Id*. at ¶ 21.) M-Audits' state court complaint alleges breach of contract and interference of contract, and seeks injunctive relief. (*Id*. ¶¶ 29-47.)

3

**2. Procedural**

When HealthSmart removed this case to federal court, a motion by plaintiff for a temporary restraining order ("TRO") was pending on the state court docket. The Court was advised of the motion by counsel during a telephonic status conference conducted on July 22, 2015.[3]  (*See* Minutes of proceedings July 22, 2015.)

The Court referred the case to Magistrate Judge Kathleen Burke to resolve the TRO. (Doc. No. 10.) Magistrate Judge Burke conducted a settlement conference, and the parties reached agreement and drafted an agreed order to resolve the TRO. Directly after the settlement conference was concluded, counsel and their respective client representatives went on the record before the Court, and advised the undersigned that they understood, and agreed to, the terms contained in the agreed order that they prepared. The Court approved the agreed order, and it was filed on the record. (*See* Minutes of proceedings Aug. 24, 2015.)  The Court retained jurisdiction to enforce the terms of the agreed order. (Order at 259.)

Less than three months later, M-Audits filed its first motion to show cause and for an order of contempt, claiming that HealthSmart was in violation of the agreed order. The Court referred the motion to Magistrate Judge Burke for a report and recommendation, and if appropriate, to conduct an additional settlement conference. (Doc. No. 25.) Magistrate Judge Burke established a briefing schedule, and conducted a hearing on January 4, 2016. (*See* Minutes and Order Jan. 4, 2016.)[4]

---

[3] After the status conference, the TRO was filed on the docket at Doc. No. 9 at 86-117. All references to page numbers are to the page identification numbers generated by the Court's electronic filing system.

[4] The transcript of proceedings conducted by Magistrate Judge Burke is filed on the docket of this case at Doc. No. 58 ("Tr.").

Thereafter, Magistrate Judge Burke issued an R&R, recommending, among other things, that M-Audits' motion be granted in part and denied in part. HealthSmart filed a partial objection to the R&R, and a second motion to modify the agreed order, both of which are before the Court. Thereafter, M-Audits filed a second motion to show cause and application for an order of contempt, which is also before the Court.

**B. HealthSmart's objections to the R&R**

**1. The Report and Recommendation**

The agreed order, which is central to both issues before the Court, provides in relevant part that:

> On or before September 8, 2015, HealthSmart shall forward to M-Audits for bill review all claims of existing accounts of the Avon Lake office and accounts developed through the Avon Lake office, unless contrary instructions are received from the Plan fiduciary, that meet any of the following criteria:
>
>> 1. All institutional in-network claims of $10,000 or more;
>>
>> 2. All in-network multi-line physician claims; or
>>
>> 3. All out-of-primary network multi-line physician claims and hospital claims with out of network discounts of less than 40%.
>
> Following the three criteria, the agreed order states:
>
>> HealthSmart has neither the authority nor the obligation to refer claims to M-Audits for services rendered by primary network providers under Cigna or Aetna contracts which prohibit bill review.

(R&R at 522-23, citing agreed order.)

M-Audits motion claims that HealthSmart violated the agreed order in three ways when HealthSmart:

> 1. Stopped sending Cigna, Aetna, Cofinity, and FirstHealth claims to M-Audits that met the criteria of the Order.
>
> 2. Sent SEBT[5] claims to M-Audits at the $25,000 threshold level rather than at the $10,000 threshold level.
>
> 3. Allegedly sent a letter dated November 6, 2015 to clients discouraging the clients from using M-Audits' services.

After an extensive analysis, the magistrate judge recommends that HealthSmart be found in civil contempt for failing to comply with the agreed order with respect to items 1 and 2, but that HealthSmart should not be found to have violated the agreed order as to item 3. (*See* R&R at 528-37.) The magistrate judge also recommends that: (1) an accounting be conducted at HealthSmart's expense in order to compensate M-Audits for losses sustained as a consequence of HealthSmart's failure to comply with the agreed order; (2) HealthSmart be fined $1,000 per day for each day after the Court's ruling that HealthSmart remains in violation of the agreed order; (3) HealthSmart be required to pay reasonable attorney fees and costs to M-Audits in connection with the motion; and (4) the Court consider appointing a special master to resolve additional disputes that may arise regarding compliance with the agreed order, the cost to be shared equally between the parties. (R&R at 537-39.)

---

[5] SEBT stands for Student Educational Benefit Trust. (R&R at 519.)

## 2. Objections to the R&R

M-Audits did not object to the R&R. HealthSmart filed a partial objection[6] to the R&R, challenging three of the recommendations contained therein: (1) that it be found in civil contempt for failing to send M-Audits SEBT claims that were below the $25,000 claim threshold; (2) that HealthSmart be required to pay M-Audits' reasonable attorney fees in connection with the motion; and (3) that a generic accounting is not an appropriate remedy to determine damages.[7] (Obj. at 540-41.) The Court reviews HealthSmart's objections *de novo*.[8] *See Damon's Rest., Inc. v. Eileen K Inc.*, 461 F. Supp. 2d 607, 611 (S.D. Ohio 2006) (*de novo* review of report and recommendation that plaintiff's motion for civil contempt be granted).

## 3. Analysis

### *SEBT claim thresholds*

The agreed order provides that SEBT claims over $10,000 will be referred to M-Audits.[9] HealthSmart does not dispute that after the agreed order was entered, it only referred claims above $25,000. HealthSmart's stated reason for doing so is that the pre-closing SEBT threshold was $25,000, and the purpose of the agreed order was to place

---

[6] The failure to file written objections to the report and recommendation of a magistrate judge constitutes a waiver of a *de novo* determination by the district court of an issue covered in the report. *Thomas v. Arn*, 728 F.2d 813, 815 (6th Cir. 1984), *aff'd*, 474 U.S. 140 (1985); *see United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). Therefore, all aspects of the R&R for which no objection has been filed are accepted and adopted by the Court. The Court accepts the magistrate judge's recommendation to consider appointing a special master, but will defer making an appointment at this time.

[7] If the Court overrules HealthSmart's objection to an accounting, HealthSmart requests that the Court modify that requirement so that HealthSmart must only pay reasonable accounting fees. (Obj. at 540-41.)

[8] HealthSmart utilizes a *de novo* standard of review in arguing its objections. Plaintiff does not contend that HealthSmart has utilized the incorrect standard of review.

[9] The parties do not dispute that M-Audits' allegation regarding the SEBT claim threshold refers to criteria 1 of the agreed order.

the parties in the same position that they were prior to closing. HealthSmart contends that the $10,000 claim threshold stated in the agreed order is a mistake of fact. (*See* R&R at 534.) M-Audits, on the other hand, maintains that the pre-closing SEBT claim threshold was $10,000.

At the evidentiary hearing, the parties offered conflicting testimony as to the SEBT claim referral threshold before the closing, but provided no documentary evidence. The magistrate judge requested post-hearing documentation of the pre-closing claim level for SEBT. (*Id*. at 534-35.) Upon considering the parties' post-hearing documentation, the magistrate judge observed that neither party's evidence is conclusive on the issue, but that HealthSmart's evidence was more convincing than M-Audits regarding pre-closing SEBT thresholds. (*Id*. at 535.)

Supplemental briefs were filed by both sides on this issue after the R&R was issued. The Court has reviewed these filings, and finds that the information and arguments contained therein only reinforces the parties' fact dispute regarding the pre-closing threshold levels, and does nothing to clarify the issue.

While the parties dispute the pre-closing thresholds, the language of the agreed order is clear and unambiguous that the threshold is $10,000. At the hearing conducted by the Court to review the agreed order after the settlement conference, both HealthSmart's and M-Audits' counsel and party representatives represented to the Court that they understood and approved the agreed order. Thus, the Court must conclude that, at the time they crafted the agreed order, the parties intended to set the claim threshold at $10,000. *G.G. Marck & Assoc., Inc. v. Peng*, 309 F. App'x 928, 934 (6th Cir. 2009) (the interpretation of a consent decree is a question of contract interpretation under the law of

the state in which it was formed, and the court's task is to ascertain the intent of the parties at the time of the settlement) (citations omitted). HealthSmart's entire objection centers on the contention that the parties actually intended the claim threshold to be $25,000, even though the agreed order sets the threshold at $10,000, and thus HealthSmart did not violate the agreed order when it used $25,000 as the threshold to send claims to M-Audits for review. (Obj. at 542-45.) Even if both parties intended that the agreed order place them in their pre-closing positions with respect to claim review, there is no agreement—or conclusive evidence—that the pre-closing threshold was $25,000.

After conducting a *de novo* review, the Court concludes the magistrate judge's recommendation the HealthSmart is in civil contempt with respect to the SEBT threshold is correct. The plain language of the agreed order with respect to SEBT claim thresholds is unambiguous, and there is nothing in the agreed order that makes the $10,000 threshold susceptible to more than one interpretation. *Infocision Mgmt. Corp. v. Found. for Moral Law Inc.*, Nos. 5:08CV1342, 5:08CV1412, 2010 WL 4365514, at *5 (N.D. Ohio Oct. 27, 2010) ("'Contractual language is ambiguous only where its meaning cannot be determined from the four corners of the agreement or where the language is susceptible of two or more reasonable interpretations.'") (quoting *Covington v. Lucia,* 151 Ohio App. 3d 409, 414 (Ohio Ct. App. 2003) (further citations omitted)). Because the agreed order is unambiguous that the claim threshold is $10,000, the agreed order must be construed within its four corners, and not by reference to what might serve one party's purpose. *See G.G. Marck & Assoc.*, 309 F. App'x at 934 (citations omitted).

HealthSmart admits that it did not comply with the agreed order as to the $10,000 threshold level for SEBT claims. Thus, M-Audits has established HealthSmart's noncompliance by clear and convincing evidence, and HealthSmart has not shown that it was unable to comply. Indeed, HealthSmart's noncompliance is intentional. *Glover v. Johnson*, 138 F.3d 229, 244 (6th Cir. 1998) (citations omitted).

HealthSmart's objection is overruled. The recommendation of the magistrate judge that HealthSmart be found in civil contempt for violation of the agreed order with respect to SEBT claims is accepted and adopted.[10]

### *Attorney fees*

Finding HealthSmart to be in civil contempt, the magistrate judge recommended that HealthSmart be required to pay reasonable attorney fees and costs to M-Audits related to the motion. In objecting to this recommendation, HealthSmart recognizes that it is within the Court's discretion to award attorney fees for noncompliance with an order. (Obj. at 545.) HealthSmart argues, however, that such an award in this case would constitute an abuse of discretion due to "uncertain terms contained in the order and the changing position of M-Audits" with respect to HealthSmart's noncompliance of its obligations under the order concerning Cigna, Aetna, Cofinity, and First Health claims. (Obj. at 545-46.) That said, the Court notes that HealthSmart did not object to the recommendation that it be found in civil contempt for violating the agreed order with respect to Cigna, Aetna, Cofinity, and First Health claims.

---

[10] The Court notes that HealthSmart's violation of the agreed order in this regard ceased on January 1, 2016, because the plan fiduciary for SEBT terminated its TPA contract with HealthSmart. (Doc. No. 48-1 (Affidavit of James McGlamery) ¶ 16.)

The Court has found HealthSmart to be in civil contempt with respect to two provisions of the agreed order. As a consequence of HealthSmart's non-compliance, M-Audits has been required to expend financial resources in the form of attorney fees.

"The primary purpose of a civil contempt order is to 'compel obedience to a court order and compensate for injuries caused by non-compliance.'" *McMahan & Co. v. Po Folks, Inc.*, 206 F.3d 627, 634 (6th Cir. 2000) (quoting *TWM Manuf. Co. v. Dura Corp.*, 722 F.2d 1261 (6th Cir. 1983)). An award of attorney fees is appropriate for civil contempt where the Court's order has been violated. *Id.* (citing *Redken Lab., Inc. v. Levin,* 843 F.2d 226 (6th Cir. 1988)); *see also Williamson v. Recovery Ltd. P'ship,* 467 F. App'x 382, 392–402 (6th Cir. 2012) (affirming an order of contempt for willfully violating a discovery order and awarding attorney fees and costs).

After conducting a *de novo* review, the Court concludes that it is an appropriate exercise of its discretion to award reasonable attorney fees to M-Audits to compensate M-Audits for the expenditure of attorney fees necessitated by HealthSmart's violation of the agreed order. HealthSmart's objection is overruled, and the magistrate judge's recommendation that HealthSmart be required to pay reasonable attorney fees and costs related to M-Audits' motion is accepted and adopted.

### *Accounting*

The magistrate judge recommended an accounting be performed at HealthSmart's expense to determine the appropriate compensation for M-Audits for the losses it sustained as a consequence of HealthSmart's violation of the agreed order. To perform this accounting, the magistrate judge recommended that the parties utilize the Claims

List[11] provided by HealthSmart, from which M-Audits estimates that approximately 15,000 claims would have been sent to it for review if HealthSmart had not violated the agreed order. (R&R at 537-38.) The underlying premise is that M-Audits is compensated for its services by being paid a percentage of the dollar amount its claim reviews save the insurer and/or benefit plan. (*Id.* n.19.) The recommendation does not address a specific procedure or method by which to actually calculate the damages sustained by M-Audits with respect to the claims identified on the Claims List that M-Audits should have received for claims review.

HealthSmart objects, arguing that M-Audits' compensation for some of the claims that should have been referred depends upon a finding of savings for the provider, and that an audit of those claims cannot now be performed, thus the damages estimated for those claim would be mere speculation. (Obj. at 546.) HealthSmart seeks a modification of the magistrate judge's recommendation and suggested a procedure to identify claims that were eligible for code editing and fraud and abuse, and base M-Audits' damages upon an average net loss per claim determined by a review of past revenues based on similar claims. (*Id.*) In responding to HealthSmart's objection, M-Audits concedes that some assumptions will have to be made in order to calculate its damages. (Resp. to Obj. at 592.)

To the extent that HealthSmart's objection seeks a modification of the recommendation in order to clarify the procedure and criteria to be used for calculating M-Audits' damages, the objection is sustained. To the extent that HealthSmart's

---

[11] The R&R defines the Claims List as all claims submitted to HealthSmart since September 8, 2015 that pertain to the clients identified in the Client List (defined in the R&R at 524), and that meet the three criteria outlined in the agreed order. (R&R at 525.)

objection seeks to exclude from the accounting any claims that should have been referred to M-Audits had HealthSmart complied with the agreed order, the objection is overruled.

The Court orders the parties to confer and develop a joint proposal outlining the procedure and criteria to be followed to calculate damages due M-Audits for claim reviews that it should have received if HealthSmart had complied with the agreed order. HealthSmart's suggested use of averages for similar claims is an example of one possible method. Depending upon the nature of the procedure and criteria agreed upon, it may be possible for the parties to perform the damages review in-house without the need for an accountant. If, however, the agreed upon process requires the use of external resources, HealthSmart shall bear all reasonable costs and expenses associated therewith.

The joint proposal shall be filed with the Court by October 21, 2016. If the parties cannot jointly agree on a damages computation procedure, the Court will intervene. The parties are cautioned, however, to work together cooperatively and in good faith, and to make every effort to develop an agreed process.

Accordingly, the magistrate judge's recommendation as to the accounting is clarified and modified in accordance with the terms of this opinion and order.

**B. HealthSmart's Second Motion to Modify the Order**

HealthSmart moves to modify the agreed order pursuant to Fed. R. Civ. P. 60(b), and submits a proposed modification. (D. Mot. at 566-67.) HealthSmart filed this motion on the same day it filed its objections to the R&R.

According to HealthSmart, it became evident to HealthSmart after the contempt hearing "that the SEBT Claim issue is only one of many complications created by the Order's overly broad characterizations of the categories of claims and types of bill review

services the parties intended M-Audits to receive and provide. . . . Although the Order

was negotiated in good faith by high-ranking representatives from both parties, the

complete lack of specificity and granularity in describing the distinct categories of claims

and types of bill review services . . . has rendered its consistent and uniform

implementation impracticable, if not impossible." (*Id*. at 549.) HealthSmart attributes this

situation to a lack of input

> from the lower level employees, who are also the technical experts on the
> claims process and bill review standards and thresholds, [and who] should
> have played a larger role in crafting the Order. As a result of the parties'
> excusable neglect and mutual mistake regarding the process for directing
> claims for bill review, the resulting Order failed to establish a consistent
> and workable framework for directing claims to M-Audits. Given the high
> level at which the detailed, technical and complex claims process was
> addressed in the Order, it is clear that the high ranking officers on both
> sides were mutually mistaken as to the level of expertise required to
> implement a clear and precise Order governing the flow of claims from
> HealthSmart to M-Audits for bill review.

(*Id*. at 563.)

### 1. Governing Law

This matter is before the Court on diversity jurisdiction, therefore the Court

applies the substantive law of Ohio with respect to interpretation of the agreed order. *See*

*State Farm Fire & Cas. Co. v. Rowland Plumbing, Ltd.*, No. 5:11CV316, 2012 WL

169960, at *2 (N.D. Ohio Jan. 18, 2012) (citing *Erie v. Tompkins,* 304 U.S. 64, 58 S. Ct.

817, 82 L. Ed. 1188 (1938)); *Savedoff v. Access Grp.,* 524 F.3d 754, 762 (6th Cir. 2008)

(citation omitted). HealthSmart's motion for relief from judgment pursuant to Fed. R.

Civ. P. 60(b), however, is a procedural matter which is controlled by federal, not state,

law. *See Davis by Davis v. Jellico Cmty. Hosp. Inc.*, 912 F.2d 129, 131 (6th Cir. 1990)

(citing *Still v. Townsend,* 311 F.2d 23, 24 (6th Cir. 1962) (holding that Rule 60(b) is

controlled by federal, not state, law)); *Conte v. Gen. Housewares Corp.*, 215 F.3d 628, 639 (6th Cir. 2000) (citing *Davis*).

Rule 60(b) governs the criteria for determining whether relief from an order is warranted, and provides that:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable or (6) any other reason that justifies relief.

In its motion, HealthSmart argues the agreed order should be modified because of the parties' excusable neglect and mistake, and because the terms are no longer equitable in light of subsequent developments between the parties. (D. Mot. at 562-63.)

### Fed. R. Civ. P. 60(b)(1)

"Relief under Rule 60(b)(1) is proper 'in only two situations: (1) when a party has made an excusable mistake or an attorney has acted without authority, or (2) when the judge has made a substantive mistake of law or fact in the final judgment or order.'" *Sipers v. Madison Cnty.*, No. 12-1130, 2015 WL 237217, at *2 (W.D. Tenn. Jan. 16, 2015) (quoting *United States v. Reyes,* 307 F.3d 451, 455 (6th Cir. 2002)). The party who attacks an order entered in connection with a settlement agreement bears the burden of proof. *See Harney v. Walden*, Civil Action No. 10-200-JBC, 2012 WL 4329281, at *1 (E.D. Ky. Sept. 19, 2012) (citing *Brown v. County of Genesee,* 872 F.2d 169, 174 (6th Cir. 1989)).

15

In opposing the motion, M-Audits is unequivocal that there was no mistake on the part of M-Audits with respect to the agreed order, and submits the affidavit of its CEO, Tom Patton, who participated in the settlement negotiations and drafting of the agreed order. (Doc. No. 53-1 (Affidavit of Thomas Patton ["Patton Aff."]) ¶ 5 ("First and foremost, M-Audits did not make any mistake with respect to the Agreed Order.").) Patton further maintains that, on the part of M-Audits, all of the individuals required by M-Audits to negotiate the agreed order, including M-audits technical expert, Kathleen O'Leary, were present for the negotiation. (Patton Aff. ¶ 2.)

HealthSmart has failed to carry its burden to establish excusable mistake or neglect in the negotiation of the agreed order. Beyond the argument of counsel in its brief and attached worksheets and flow charts, HealthSmart provides no affidavit or other evidence that HealthSmart's "lower level employees" were needed by, but not available to, HealthSmart's "high ranking officers" during the parties' negotiation of the agreed order, or that HealthSmart's "high ranking officers" made a mistake in connection with parties' negotiated order.

Moreover, immediately after the parties negotiated the agreed order on August 24, 2015, the Court conducted a hearing to review the agreed order with counsel and the party representatives for both sides. In addition to counsel, present for M-Audits was M-Audits' principal, Thomasina Patton, as well as Tom Patton and Kathleen O'Leary. Party representatives present for HealthSmart were Tom Kelly (CEO), Sarah Bittner (general counsel), Mark Stadler (chief of marketing), and Lauren Claypool (chief of operations). At the hearing, the Court inquired of Ms. Patton and Mr. Kelly as to whether they understood the terms of the agreed order and were in agreement with those terms, and

whether they had an opportunity to review the proposed order with their respective counsel and teams. Both Ms. Patton and Mr. Kelly answered the Court in the affirmative. At no time did Mr. Kelly, counsel, or any other representative for HealthSmart indicate to the Court that further information was necessary, or that they needed to consult with other employees of HealthSmart that were not available, in order to understand or negotiate the agreed order.

Accordingly, HealthSmart's motion to modify the agreed order on the basis of Rule 60(b)(1) is denied.[12]

### *Fed. R. Civ. P. 60(b)(5) and (6)*

HealthSmart also argues that the agreed order should be modified because it is no longer equitable in light of "subsequent developments." (D. Mot. at 562-63.). The subsequent developments to which HealthSmart refers are the same reasons that HealthSmart argued in support of reformation of the order due to excusable neglect or mutual mistake—HealthSmart's officials were mistaken as to the level of expertise required to negotiate the order and did so without consulting "lower level employees." (*Id*. at 563.)

Rule 60(b)(5) does not allow modification of an agreed order absent a "significant change either in factual conditions or in law." *Northridge Church v. Charter Twp. of Plymouth*, 647 F.3d 606, 614 (6th Cir. 2011) (quoting *Rufo v. Inmates of Suffolk Cnty. Jail,* 502 U.S. 367, 378, 112 S. Ct. 748, 116 L. Ed. 2d 867 (1992)); *Horne v. Flores,* 557

---

[12] An analysis of mutual mistake under Ohio law yields same result. Ohio law permits reformation of a contract "to remedy a mutual mistake, but not a unilateral one." *Drillers Place Ltd. v. Mormack Indus., Inc.*, 2016 WL 228842, at *6 (Ohio Ct. App. Jan. 19, 2016) (quoting *Gen. Tire, Inc. v. Mehlfeldt,* 691 N.E.2d 1132, 1136 (Ohio Ct. App. 1997)). "The party alleging mutual mistake has the burden of proving its existence by clear and convincing evidence." *Id.*

U.S. 433, 447, 129 S. Ct. 2579, 174 L. Ed. 2d 406 (2009) (Rule 60(b)(5) "provides a means by which a party can ask a court to modify or vacate a judgment or order 'if a significant change either in factual conditions or in law' renders continued enforcement 'detrimental to the public interest.'") (quoting *Rufo*). As the party seeking modification of the agreed order, HealthSmart "bears the burden of establishing that a significant change of circumstances warrants revision of the [order]." *Northridge Church*, 647 F.3d at 614 (quoting *Rufo*, 502 U.S. at 383).

HealthSmart has failed to carry its burden. HealthSmart does not contend that changes in the law prompted its motion to modify the order. The changed circumstances that HealthSmart argues support modification, to the extent they are changed circumstances at all, did not arise outside of HealthSmart's control. The team selected by HealthSmart to negotiate the agreed order, and their decisions regarding who should be consulted regarding the terms of the order, was HealthSmart's choice. Here, the claimed ignorance of HealthSmart's party representatives regarding the complexity of claim processing, and purported later realization of the need for those representatives to consult "lower level employees," is not the kind of changed circumstance that warrants the extraordinary remedy of modification of the order. *See Northridge Church*, 647 F.3d at 614 (citing *East Brooks, Inc. v. City of Memphis*, 633 F.3d 459, 465 (6th Cir. 2011)). HealthSmart's choices regarding selection of the negotiation team and preparation for the settlement negotiation were entirely within HeathSmart's control, and HealthSmart's unilateral dissatisfaction with those consequences does not justify modification of the order under Rule 60(b)(5). *Northridge Church*, 647 F.3d at 618 ("Unlike many cases considering Rule 60(b)(5) challenges, where the change in factual circumstances was

outside the movant's control, here the changed factual landscape stems mostly from Northridge's growth—something entirely within its own power. To allow a party to escape a consent judgment based on *its own voluntary actions* strikes us as unjustified.") (emphasis in original).

Neither do these reasons support modification of the agreed order under Rule 60(b)(6). This "catch-all" provision provides an alternative basis for relief "only in 'exceptional or extraordinary circumstances which are not addressed by the first five clauses of the Rule' and where principles of equity *mandate* relief." *Commodity Futures Trading Comm'n v. Allied Fin. Grp., Inc.*, No. 2:94-cv-981, 2008 WL 755216, at *4 (S.D. Ohio Mar. 20, 2008) (quoting *Olle v. Henry & Wright Corp.,* 910 F.2d 357, 365 (6th Cir. 1990) (emphasis in original)). Courts "must apply subsection (b)(6) only 'as a means to achieve substantial justice when 'something more' than one of the grounds contained in Rule 60(b)'s first five clauses is present.'" *Olle*, 910 F.2d at 365 (quoting *Hopper v. Euclid Manor Nursing Home, Inc.,* 867 F.2d 291, 294 (6th Cir. 1989) (internal quotation marks omitted)).

For all of the foregoing reasons, HealthSmart's motion to modify the agreed order pursuant to Rule 60(b) is denied.

## C. Conclusion

After a *de novo* review of the issues raised by HealthSmart's objections, the R&R is accepted and adopted, except with respect to the recommendation regarding an accounting, which is clarified and modified as described herein. No later than October 21, 2016, the parties shall submit a joint proposal outlining a procedure and criteria by which to calculate M-Audits' losses caused by HealthSmart's violation of the agreed order.

Accordingly, M-Audits' first motion to show cause and for contempt (Doc. No. 24) is granted in part and denied in part as detailed in the R&R and as set forth herein. Additionally, HealthSmart's second motion to modify the agreed order (Doc. No. 52) is denied.

**IT IS SO ORDERED**.

Dated: September 29, 2016

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**